Angela PASTORE, Plaintiff,

v.

MEDFORD SAVINGS BANK, Defendant.

Civ. A. No. 94–11762–RCL.

United States District Court,
D. Massachusetts.

Oct. 9, 1995.

Patrick B. Hurley, Barend, Heartquist & Hurley, Brookline, MA, for plaintiff.

James W. Nagle, Goodwin, Proctor & Hoar, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

In this action the plaintiff alleges that the defendant discriminated against her on the basis of her prior bankruptcy status, in violation of 11 U.S.C. § 525(b), and that, in doing so, the defendant also intentionally inflicted emotional distress for which the plaintiff is entitled to recover pursuant to Massachusetts law. The defendant has moved for dismissal of both the discrimination claim and the claim for intentional infliction of

emotional distress. For the reasons set forth herein, the defendant's motion to dismiss is granted.

■ On a motion to dismiss, all factual allegations in the complaint are taken as true. *Garita Hotel Ltd. Partnership v. Ponce Federal Bank F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992). The following factual allegations, then, are taken from the complaint, and for purposes of this motion, are deemed to be true.

*Factual Allegations*

The plaintiff voluntarily filed for bankruptcy in April, 1992. In August of that year her personal debts were discharged by the Bankruptcy Court.

On January 18, 1994, the plaintiff completed an employment application with the defendant, indicating that she was interested in a full-time position as a teller. That same day, the plaintiff was contacted by Ms. Jolene O'Leary, an employee of the defendant, who requested that the plaintiff come in for an interview. On January 20, 1994, Ms. O'Leary interviewed the plaintiff for the position of bank teller. During the interview, the plaintiff was informed that, in addition to the position of bank teller, there was a position available for a customer service representative. The plaintiff was informed that, in several days, she would have an interview with Ms. Norma Marino for the position of customer service representative. On January 22, 1994, the plaintiff had that interview.

On the morning of January 25, 1994, the plaintiff telephoned Ms. O'Leary regarding her status. Ms. O'Leary informed the plaintiff that she would contact the manager of the defendant's Oak Grove Branch, who, in turn, would contact the plaintiff regarding a position at that branch. That same afternoon, Ms. O'Leary telephoned the plaintiff's residence and left a message requesting that the plaintiff return her call when she returned home. Later that afternoon, the plaintiff telephoned Ms. O'Leary, who informed her that, as a result of the plaintiff's credit report, the plaintiff would not be hired.

*Discussion*

■ The defendant claims that 11 U.S.C. § 525(b) of the Bankruptcy Code does not apply to *hiring* decisions by private employers. Subsection (a) of § 525 prohibits governmental entities from discriminating against an individual in employment and certain other areas on the basis of the individual's current or prior bankruptcy status. Subsection (a) provides that the government may not *"deny employment to,* terminate the employment of, or discriminate with respect to employment against" a person who has been a bankruptcy debtor (emphasis added). Subsection (b) was added in 1984 to extend some of the same anti-discrimination principles to private employers, and it provides:

> No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor.

The language of subsection (b) mirrors the language of subsection (a), with the exception that the phrase "deny employment to" was omitted from the former. The defendant argues that one must infer that the different language is intentional and that subsection (b) was intended only to protect individuals within an existing employer-employee relationship from discrimination. The plaintiff counters that Congress intended to "streamline" the language of the statute, and that "the broad phrase 'discriminate with respect to employment against' can reasonably be interpreted to encompass a private employer's decision not to hire." *

The plaintiff's argument would be more convincing if subsection (b) referred solely to "discrimination with respect to employment." The fact that there is specific mention of discrimination in the *termination* of employment, but no corresponding mention of the inception of employment suggests an intentional omission. Indeed, the *only* difference between the language of subsection (a) and that of subsection (b) concerning discrimination in employment is that subsection (b)

---

* The plaintiff has cited no authority, however, to support this assertion or to support the broader claim that 11 U.S.C. § 525(b) creates a cause of action for discrimination in hiring against a private employer on the basis of bankruptcy status.

contains no reference to the prohibition against the denial of employment. This strongly suggests that Congress intentionally omitted the reference to discrimination in hiring from the provision regulating the conduct of private employers.

■ Where the language of one provision in a statute differs from the language in a later provision, it is logical to conclude that the legislators intended that different language. "Where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded." *J. Ray McDermott & Co., Inc. v. Vessel Morning Star,* 457 F.2d 815, 818 (5th Cir.1972). *See also League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1171 (9th Cir.1979); *Marshall v. Western Union Telegraph Co.,* 621 F.2d 1246, 1251 (3rd Cir. 1980); *Intern. Union, UMWA v. Mine Safety & Health Admin.,* 823 F.2d 608, 618 (D.C.Cir.1987). Moreover, "[i]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it ... In the absence of strong indicia of a contrary congressional intent, [a court should] conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cty. Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981).

A review of the legislative history of 11 U.S.C. § 525, as amended by subsection (b), offers no illumination as to the breadth of its application to private employers. But some enlightenment on the scope of this section can be derived from case law. Several bankruptcy courts have answered in the negative the question of whether that subsection applies to hiring decisions of private employers *E.g., In re Briggs,* 143 B.R. 438 (Bkrtcy E.D.Mich.1992); *In re Madison Madison Intern. of Illinois,* 77 B.R. 678 (Bkrtcy. E.D.Wis.1987), or have held that the subsection applies only to private decisions of private employers *after* an offer of full-time employment has been extended *E.g., In re Hopkins,* 81 B.R. 491 (Bkrtcy.W.D.Ark.1987).

■ The language and structure of the statute, viewed in light of established canons of statutory construction, the absence of support for the plaintiff's position in the legislative history of the statute, and decided cases all suggest that 11 U.S.C. § 525(b) does not create a cause of action for failure to hire because of an individual's bankruptcy status. Accordingly, the plaintiff's claim under this statute is dismissed.

■ Because the plaintiff has not stated a federal cause of action, the court declines to exercise supplemental jurisdiction over her state claim. *Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees,* 974 F.2d 391, 398 (3rd Cir.1992); 13 B Wright, Miller & Cooper, *Federal Practice and Procedure* § 3567.1 (2d ed. 1984 and 1995 Supp.). "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state law claims." *Rodriguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1177 (1st Cir.1995). The plaintiff's claim of intentional infliction of emotional distress is therefore dismissed without prejudice.

Judgment shall enter for the defendant on both claims asserted by the plaintiff.

So ordered.